IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Criminal Action **No. 09-cr-301-JLK**

**UNITED STATES OF AMERICA,**

               Plaintiff,

v.

**1.    DANIEL ANDRES MORONES,**

              Defendants.

---

ORDER

---

Kane, J.

      This case is before me on two Motions mailed by Mr. Morones, which were received by the court on August 30, 2011. Mr. Morones's three-week trial on charges of conspiracy and second-degree murder is set to commence September 6, 2011, immediately following the Labor Day weekend that begins tomorrow afternoon. Mr. Morones is currently represented, but submits his Motions *pro se*. Given the nature of the issues raised and concerns regarding delay and the manipulation of the judicial process, I ordered Mr. Morones to be brought up from Littleton this afternoon and set these matters for an emergency hearing.

      In his Motions, Mr. Morones seeks (1) to re-waive right to counsel and proceed to Tuesday's trial *pro se* (Doc. 987) and (2) to force my recusal as the presiding judicial officer (Doc. 988). I address the latter Motion first.

*Motion to Recuse (Doc. 988)*

      Mr. Morones moves for my recusal under 28 U.S.C. §§ 144 and 455(b)(1), both of which compel recusal for personal bias. I have no such bias, and am on record throughout

this case and Mr. Morones's related case 09-cr-261-JLK as having treated him with the same courtesy and respect as anyone else who enters my courtroom, be they counsel, a defendant, or a juror. Nevertheless, Mr. Morones has filed his Motion and I must address it on its merits, however meager those may be.

Under 28 U.S.C. § 144, a district judge must recuse if a party files a "timely and sufficient affidavit" establishing that the judge has a personal bias or prejudice against the party seeking recusal, or in favor of the adverse party. 28 U.S.C. § 144, *applied in Winslow v. Lehr*, 641 F. Supp. 1237 (D. Colo. 1986)(Kane, J.). "'The bias charged must be of a personal nature and must be such as would likely result in a decision on some basis other than what the judge learned from his participation in the case.'" *SEC v. Solv-Ex Corp.*, 164 F. Appx. 765, 766 (10th Cir.2006)(quoting *United States v. Irwin*, 561 F.2d 198, 200 (10th Cir.1977 )). Although all factual allegations in an affidavit filed under § 144 must be presumed true, such an affidavit is "strictly construed against the affiant and there is a substantial burden on the moving party to demonstrate that the judge is not impartial." *Id.* (citing *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir.1992)). Mr. Morones's "affidavit," which is unsworn, is comprised almost exclusively of Mr. Morones's hearsay version of an obviously testy telephone conversation he had with his counsel, Mr. Berger.

According to Mr. Morones, Mr. Berger told him in that conversation that "Judge Kane believes Morones is guilty" and that, in a "long conversation" Mr. Berger had with Judge Kane after Morones agreed to allow Mr. Berger to represent him, "[Judge Kane

2

said] "if Morones were to plead guilty and give a statement [as] to why Morones does what he does . . . that Judge Kane would or may grant Morones a little bit of lienency [sic] at sentencing." Mot. (Doc. 988) at 2. As an initial matter, neither statement is true. More importantly, however, is that both statements are hearsay and therefore inadmissible to prove the truth of the matter asserted.[1] Neither, therefore, is deemed trustworthy enough to trigger the presumption for mandatory recusal under § 144. Mr. Morones's general assertions that "Judge Kane allowed the prosecutor to use perjured grand jury testimony at trial and lets prosecutor Hosley get away with violating my constitutional rights" reflect Mr. Morones's opinions and are not facts upon which my recusal under § 144 may be demanded.

Under 28 U.S.C. § 455, there is a broader scope for claims of prejudice and bias and recusal may be appropriate where a judge's impartiality "might reasonably be questioned," or where the judge has "a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a), (b)(1). No affidavits are required. *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.1987). Under this statute, the judge must recuse when there is the appearance of bias, regardless of whether there is actual bias. *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659 (10th Cir.2002). The test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality. *Id.* No

---

[1] *See Hodgson v. Liquor Salesmen's Union*, 444 F.2d 1344, 1349 (2d Cir.1971) ("The fact that an application is based entirely on hearsay may be taken into account in judging the sufficiency of the affidavit."); *see also Estate of Bishop v. Equinox Int'l Corp.*, 256 F.3d 1050, 1058 (10th Cir.2001) ("Factors that do not merit disqualification include: rumor, speculation, beliefs, conclusions, or other non-factual matters . . . ."); *Winslow*, 641 F.Supp. at 1241 ("An affidavit is deemed insufficient when it lacks facts showing a personal bias or prejudice, and contains only insufficient conclusions.").

reasonable person, knowing the facts and history of my treatment of and interactions with Mr. Morones over the course of this case or his unrelated criminal Case No. 09-cr-261-JLK, would harbor such doubts. The records in both cases speak for themselves, and in that context, nothing in Mr. Morones's Motion to Recuse warrants my recusal now, mere days before trial.

The Motion to Recuse (Doc. 988) is DENIED.

*Motion to Waive Counsel and Proceed to Trial Pro Se (Doc. 987)*

Mr. Morones's request that he be allowed to re-waive his right to counsel, and proceed to trial next week on the pending conspiracy and murder charges representing himself, places the Sixth Amendment's counterposed right to counsel and right to self-representation squarely at odds and raises serious questions regarding obstruction and the integrity of the judicial process, as well as Mr. Morones's other and countervailing rights to a fair trial. First, some relevant background.

After representing himself – successfully, in his view, but to a guilty verdict – in a four-day trial last December on assault charges stemming from altercations with prison guards (which included an instance in which Mr. Morones threw a cup containing what was identified as Mr. Morones's own semen on a guard picking up his food tray) Mr. Morones initially waived his right to counsel in this case, electing to proceed *pro se* to trial with four of his alleged co-conspirators, all of whom were represented by counsel. I granted Mr. Morones's request, appointing Mr. Berger to serve as advisory counsel. A seven-week trial of the five alleged co-conspirators, including Mr. Morones, was set to commence on May 2, 2011.

On April 8, 2011, less than one month before the seven-week trial, Mr. Morones moved for severance and to continue his trial for a separate and later date. (Docs. 716, 717.) Over the

4

government's strenuous objection, I granted Mr. Morones's Motions and set the government's case against him for a three week trial commencing September 6, 2011. Jury selection on a special venire panel for the now-four-defendant murder and conspiracy trial went ahead as previously scheduled on May 2, 2011, but trial itself was continued for two weeks so that the government and defense counsel could tailor their cases to go forward without Mr. Morones and could reschedule witnesses and reissue subpoenas as necessary. All four of Mr. Morones's co-defendants were convicted on every charge against them, and each was sentenced in an all-day proceeding in my court just last week.

On August 8, 2011, as Mr. Morones's trial loomed and deadlines for the submission of jury instructions, witness lists, and exhibits approached, Mr. Berger formally entered his appearance as counsel for Mr. Morones. *See* Notice of Attorney Appearance (Doc. 928). In his Notice, Mr. Berger represented that Mr. Morones had "directed counsel to file this notice" and would be "filing a document with the court to confirm this decision." *Id.* On August 16, 2011, Mr. Morones filed a handwritten document entitled "Motion to Withdraw from Self-Representation" (Doc. 958), notifying the court of "his withdrawal from pro se status," and complaining of "being singled out" and placed "under duress" by BOP officials resulting in his "not [being] competent to proceed to trial pro se." Mot. to Withdraw (Doc. 958) at 3. I granted the Motion the same day (Doc. 959).

The case was set for a Final Trial Preparation Conference on August 23, 2011. On August 20, 2011, Mr. Berger filed a Motion to Excuse Defendant's Appearance at Trial Preparation Conference (Doc. 968), stating "Mr. Morones does not feel that he needs to attend the conference on 8/23/11 and has directed counsel to file this motion to excuse his attendance."

5

Mr. Berger further stated that "[t]ransporting [Mr. Morones] from the FCI-SHU to the court for this brief appearance requires him to spend an entire uncomfortable day in the courthouse lockup and imposes an unnecessary burden on the marshal's service for transportation and security." Significant for our purposes today, Mr. Berger also represented in his Motion that the government objected to the request that Mr. Morones be excused from the Final Trial Preparation Conference. "Mr. Hosley," the Motion stated, " would prefer to have Mr. Morones present so that there is no question about his intention to abandon his previous pro se status." Mot. (Doc. 968) at 2. Mr. Hosley feared Mr. Morones, with his maybe yes, maybe no approach to self-representation, would attempt to hold this trial, like the one before it, hostage.

Mr. Hosley's fears appear to have been well founded, as Mr. Morones's Motions to re-waive his right to counsel and for recusal followed shortly thereafter.

*Discussion.*

To invoke the right of self-representation, a defendant must: (1) "Clearly and unequivocally" assert his intention to represent himself; (2) "knowingly and intelligently" relinquish the benefits of representation by counsel; and (3) "make this assertion in a timely fashion." *U.S. v. Mackovich*, 209 F.3d 1227, 1236 -1237 (10th Cir. 2000)(applying *Faretta v. California*, 422 U.S. 806 (1975)). As an initial matter, there is every reason to believe Mr. Morones has filed these Motions for insincere reasons and purposes of delay. While he has yet to move to continue the Tuesday trial date, his Motion repeats his oft-used complaints regarding denial of access to the law library and the resulting inability to prepare for trial. *See* Motion (Doc. 887) at 2-3 (complaining of the "hindrance [sic] on Mr. Morones ability to prepare adequately for trial," "tampering" with his legal mail, "denied access to the law library"). This

6

renewed focus on his inability to prepare for the upcoming trial sets the case up for delay, and a district court properly denies a request for self-representation where it finds the request was made for such a purpose. *See Mackovich*, 209 F.3d at 1236-38 (affirming the denial of a request for self-representation made two weeks before the scheduled trial date where evidence in the record supported the district court's conclusion that the request was "merely a tactic for delay").

More importantly from my point of view, however, is that Mr. Morones's conduct during the course of this case and recently calls into question the "clearly unequivocal" prong of the *Faretta* inquiry. The right to self-representation under the Sixth Amendment exists simultaneously, and mutually exclusively with, the right *to* counsel under the Sixth Amendment. In addition, the Sixth Amendment also guarantees the right fully to confront witnesses, and to a fair trial generally. The Fifth Amendment protects a defendant from having to testify, and therefore potentially incriminating, himself. Mr. Morones's right to self-representation, particularly at this late stage of these proceedings, conflicts with each of these other fundamental rights and must yield.

Mr. Morones is currently incarcerated on a lengthy criminal record and is awaiting sentencing on the assault charges of which he was convicted after representing himself at last December's trial in Criminal Action No. 09-cr-261. While he absolved himself well at that trial, the nature of the charges there and his conduct here reveal him to be mercurial and subject to vicissitudes that require those around him, this court included, to adjust to his whims and changes of heart not just with regard to representation, but also to his requests and complaints regarding legal access and his own ability or competency to move forward.

7

The tone and tenor of Mr. Morones's Motion to Recuse, discussed *supra*, by itself suggests something about Mr. Morones's sincerity and ability to represent himself as his trial date approaches. In addition to the purported yelling match with Mr. Berger, for example, Mr. Morones has been described by FCI Lieutenant Cline as being "agitated" and "amped up" since August 16, "howling at the other inmates in the SHU about his case," and describing potential witnesses as "rats." *See* Attachment 3 to the Govt.'s Supplement to Response to Def. Morones's Mot. to Waive Counsel and Proceed Pro Se (Doc. 996), FBI memorandum of telephonic conversation with Lt. Cline. Lt. Cline also told the FBI investigator in that telephone call that yesterday, August 31, 2011, Mr. Morones made reference to getting "that bitch Hayley and that punk ass Rick . . . at court." The references are likely to AUSAs Haley Reynolds and Richard (Rick) Hosley, the prosecuting attorneys in this case.

The requirement that a defendant "clearly and unequivocally" assert his intention to represent himself "is necessary to protect against an inadvertent waiver of the right to counsel by a defendant's occasional musings on the benefits of self-representation." *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir.2000) (internal quotations omitted). The requirement "also prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation." *Id.* at 559; *see United States v. Reddeck*, 22 F.3d 1504, 1510 (10th Cir.1994) ("We have repeatedly shown concern with the use of the right to waive counsel as a 'cat and mouse' game with the courts."); *United States v. Allen*, 895 F.2d 1577, 1578 (10th Cir.1990) (quoting *United States v. McMann,* 386 F.2d 611, 618-19 (2d Cir.1967), for the proposition that a defendant cannot "by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the

judge appears to be arbitrarily depriving the defendant of counsel"). Finally, it protects against the unwitting, or less than knowing, waiver of conflicting and counterposed rights under the Sixth and Fifth Amendments to a fair trial and to avoid self-incrimination.

As Judge Briscoe eloquently stated in *Mackovich*:

In ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a *'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation.*

209 F.3d at 1236-37 (citing *Frazier-El*, 204 F.3d at 559 (emphasis mine)). I find this just such an ambiguous situation. Mr. Morones, it is true that I doubt your motives in filing this motion, and the likelihood that you are filing it to manipulate and delay is real. However, my most important concern is with your conduct and your state of mind, which leads me to be unable to find that you are, in fact, clearly and unequivocally waiving your right to counsel. I find your concomitant right *to* counsel under the Sixth Amendment, your right to confront witnesses fully, to a fair trial, and not to incriminate yourself, have constitutional primacy over your interest and right to self-representation. The Motion to Waive Counsel and Proceed Pro Se (Doc. 987) is DENIED.

Dated September 1, 2011.                    **s/John L. Kane**
                                             SENIOR U.S. DISTRICT JUDGE

